## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HERIBERTO LOZADA, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| WILMINGTON DEPARTMENT OF | : | |
| POLICE, et al., | : | No. 07-663 |
| Defendants. | : | |

## MEMORANDUM AND ORDER

Schiller, J.                                                              May 5, 2008

Plaintiff Heriberto Lozada brings this action pursuant to 42 U.S.C. § 1983 against George Taylor and Patrick Burke, officers of the Wilmington Department of Police at all times relevant to this case.[1]  Plaintiff alleges that Defendants violated his Fourth Amendment rights by mistakenly identifying him as a drug dealer, which led to his arrest and imprisonment.  Plaintiff also brings state law claims for false arrest and false imprisonment.  Currently before the Court is Defendants' motion for summary judgment.  For the following reasons, Defendants' motion is granted.

## I.    BACKGROUND

The following facts are either undisputed or taken in a light most favorable to the Plaintiff. Officers Taylor and Burke were, at all times relevant to this case, employed by the Wilmington Department of Police and assigned to the Drug, Organized Crime, and Vice division. (Pl.'s Statement of Disputed Facts [hereinafter "Pl.'s SOF"] ¶ 1.)  On or about August 2004, Taylor and Burke assisted the Drug Enforcement Administration ("DEA") with the investigation of a suspected

---

[1] Plaintiff has voluntarily dismissed his claims brought pursuant to *Monell v. Dep't of Social Services of the City of NY*, 436 U.S. 658 (1978).  (Pl.'s Mem. of Law in Opp. to Defs.' Mot. for Summ. J. [hereinafter "Pl.'s Mem."] at 16.)

heroin ring operating out of Wilmington, Delaware.  (Pl.'s SOF ¶ 2; Defs.' Statement of Undisputed Facts [hereinafter "Defs.' SOF"] ¶ 1.)    One of the targets of this investigation was a maroon minivan, which had been seen making daily stops for the purpose of meeting with individuals suspected of involvement in the drug ring.  (Defs.' SOF ¶ 12; Pl.'s SOF ¶ 12.)  The parties dispute the extent of Taylor and Burke's general responsibilities in the investigation — Defendants claim their duties were limited to surveillance, while Plaintiff claims that Defendants played a more active role by attending status meetings and sitting in on a wire tap in addition to conducting surveillance. (Defs.' SOF ¶¶ 1-5; Pl.'s SOF ¶¶ 1-5.)  The specific facts pertaining to Defendants' roles in identifying Plaintiff as a suspect, however, are not in dispute.

On September 21, 2004, Taylor and Burke were conducting surveillance in separate cars in Wilmington in connection with the DEA investigation.  (Defs.' Mem. in Supp. of Mot. for Summ. J. [hereinafter "Defs.' Mem."] Ex. A (Taylor Dep.) at 82; Pl.'s Mem. Ex. A (Surveillance Report) at S0000028.)  Burke was conducting surveillance near the parking lot of an apartment building, when he observed a maroon minivan with Pennsylvania license plates enter the lot.  (Defs.' SOF ¶ 7; Pl.'s SOF ¶ 7; Defs.' Mem. Ex. A at 39-40 & Ex. B (Burke Dep.) at 20-21.)  Burke observed the driver of the minivan meeting with Anthony Copeland, one of the suspected heroin dealers, and got at least a five-second view of the driver at that time.  (Pl.'s Mem. Ex. A at S0000028; Defs.' Mem. Ex. B at 21.)  When the minivan left the parking lot, Taylor, who was specifically assigned to conduct surveillance on the minivan, followed it as it headed toward Philadelphia.  (Defs.' SOF ¶ 8; Pl.'s SOF ¶ 8; Pl.'s Mem. Ex. A at S000028.)  While following the minivan on Interstate 95, Taylor pulled alongside it in order to get a look at the driver — he was able to see the driver, an "Hispanic male with puffy cheeks [wearing] a black Kangol hat turned backwards," for

approximately three to seven seconds.  (Defs.' SOF ¶ 9; Pl.'s SOF ¶ 9; Pl.'s Mem. Ex. A at S0000029; Defs.' Mem. Ex. A at 50-51.)  Taylor eventually lost the minivan in traffic, however, he relayed the license plate number to the DEA.  (Defs.' SOF ¶¶ 10-11; Pl.'s SOF ¶¶ 10-11; Pl.'s Mem. Ex. A at S0000028.)

From there, DEA Special Agent Michael Machak ran the Pennsylvania license plate on the maroon minivan and learned that it was registered to a Heriberto Lozada residing at 4357 North 9th Street, Philadelphia, PA; Plaintiff's name is Heriberto Lozada, but he does not reside at that address. (Defs.' SOF ¶¶ 16-17; Pl.'s SOF ¶¶ 16-17; Pl.'s Ex. A at S0000028.)  Machak then ran the name Heriberto Lozada through a database of Pennsylvania driver's licenses; this search resulted in only one license — that of Plaintiff, Heriberto Lozada, whose listed address was 1814 East Ontario Street, Philadelphia, PA.  (Defs.' SOF ¶ 18; Pl.'s SOF ¶¶ 18, 28; Pl.'s Mem. Ex. A at S0000028-29.)

Special Agent Machak showed Plaintiff's license photograph to Taylor and Burke, both of whom independently identified Plaintiff as the individual they had seen driving the maroon minivan on September 21, 2004; neither Taylor nor Burke knew how Machak obtained the photograph. (Defs.' SOF ¶¶ 13-14, 19; Pl.'s SOF ¶¶ 13-14, 19; Pl.'s Mem. Ex. A at S0000029.)   Additionally, Machak asked Taylor to compare Plaintiff's signature on his license with the signature on the vehicle registration paperwork for the minivan.  (Defs.' Mem. Ex. A at 51-52.)  Taylor told Machak that in his opinion, the signatures looked similar.  (*Id.*)  On December 1, 2004 another officer involved in the investigation observed the maroon minivan in Wilmington.  (Pl.'s Mem. Ex. A at S0000116.) This officer observed the driver meeting with Copeland and positively identified Plaintiff as the individual he had observed driving the minivan from the same photograph that was shown to

Defendants.[2]  (*Id.*; Pl.'s Mem. Ex. B (Machak Aff.) ¶ 9.)  Machak used the entirety of this information to obtain an indictment and a warrant for Plaintiff's arrest.  (Pl.'s Mem. Ex. B ¶¶ 9, 11; Defs.' Mem. Ex. C (Arrest Warrant).)  Neither Taylor nor Burke swore any affidavits in connection with the criminal indictment or warrant, nor were they involved in the decision to prosecute Plaintiff. (Defs.' SOF ¶ 21; Pl.'s SOF ¶ 21; Defs.' Mem. Ex. A at 13, 80, 105 & Ex. B at 45-46, 49-50.)

On February 19, 2005, Plaintiff was arrested by officers of the Philadelphia Police Department when he attempted to purchase a firearm and a background check revealed that a warrant was out for his arrest.  (Defs.' SOF ¶ 23; Pl.'s SOF ¶ 23.)  Plaintiff was incarcerated for four days and then released on bail. (Defs.' SOF ¶ 24; Pl.'s SOF ¶ 24.)  Officer Taylor attended Plaintiff's hearing in Philadelphia on February 25, 2005 and realized that Plaintiff was not in fact the individual he had seen driving the maroon minivan; Plaintiff was heavier and lighter skinned than the suspect, and wore glasses whereas the suspect did not wear glasses.  (Pl.'s SOF ¶ 40; Defs.' Ex. A at 41-46, 71.)  Although Taylor was not called to testify during this hearing, he relayed his observation to Machak, who was also present at the hearing.  (Defs.' Ex. A at 41-46.)

The charges against Plaintiff were dropped on April 16, 2005, when it became apparent that Plaintiff was not the individual who had been seen driving the minivan.  (Defs.' SOF ¶ 25; Pl.'s SOF ¶ 25.)  Indeed, Plaintiff never owned a maroon minivan and had no involvement with the heroin-dealing conspiracy.  (Pl.'s SOF ¶ 29.)  The minivan actually belonged to a Heriberto Lozada-Espinoza, who lived on 9th Street in Philadelphia.  (Defs.' SOF ¶ 26; Pl.'s SOF ¶¶ 26, 41.)

---

[2] The identity of this officer is unclear, and he was not included as a Defendant.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate when the admissible evidence fails to demonstrate a dispute of material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  When the moving party does not bear the burden of persuasion at trial, it may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Thereafter, the nonmoving party demonstrates a genuine issue of material fact if sufficient evidence is provided to allow a reasonable finder of fact to find for the nonmoving party at trial.  *Anderson*, 477 U.S. at 248.  In reviewing the record, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor."  *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). Furthermore, a court may not make credibility determinations or weigh the evidence in making its determination.  *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S.133,150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).


## III.   DISCUSSION

### A.   Plaintiff cannot establish that Defendants violated his Fourth Amendment rights

In order to succeed on his Section 1983 claims, Plaintiff must establish that Defendants, acting under the color of state law, deprived him of a federal right.  *Berg v. County of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000) ("Section 1983 is not a source of substantive rights and does not provide redress for common law torts — the plaintiff must allege a violation of a federal right.").

Here, Plaintiff claims that he was falsely arrested and falsely imprisoned in violation of his Fourth Amendment rights based on Defendants mistaken identification of him as the driver of the maroon minivan.

"The Fourth Amendment prohibits a police officer from arresting a citizen except upon probable cause." *Rogers v. Powell*, 120 F.3d 446, 452 (3d Cir. 1997). Thus, an arrest without probable cause is a constitutional violation that may underlie a Section 1983 claim. *Patzig v. O'Neil*, 577 F.2d 841, 848 (3d Cir. 1978). "The proper inquiry in a section 1983 claim based on false arrest . . . is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988). "When an officer does make an arrest without probable cause, the arrestee may also assert a § 1983 false imprisonment claim based on any subsequent detention resulting from that arrest." *Garcia v. County of Bucks Pa.*, 155 F. Supp. 2d. 259, 264 (E.D. Pa. 2001) (*citing Groman v. Twp. of Manalapan*, 47 F.3d 269, 236 (3d Cir. 1995)). "[Section] 1983 liability for an unlawful arrest can extend beyond the arresting officer to other officials whose intentional actions set the arresting officer in motion." *Berg*, 219 F.3d at 272. When a defendant's conduct is merely mistaken or negligent, however, liability for false arrest is not appropriate, even if that mistake causes the plaintiff's arrest. *See id.* at 274.

> I.    *Defendants cannot be liable for false arrest for merely identifying Plaintiff as the driver of the maroon minivan*

Defendants' identification of Plaintiff as the driver of the maroon minivan, based on their comparison of a photograph of Plaintiff obtained by Special Agent Machak with their prior observations of the driver, is the only conduct with which Plaintiff takes issue for purposes of this

case.  (Pl.'s Mem. at 11 (noting that "it was the actions of Detectives Taylor and Burke in identifying plaintiff, in conjunction with actions of the DEA agents that resulted in his arrest").)  It is undisputed that Defendants played no role in obtaining the photograph of Plaintiff; the investigation into the minivan's owner and the search of the database of Pennsylvania licenses that ultimately turned up Plaintiff's picture were all conducted by Machak.  It was indeed the product of Defendants' observations and Machak's police work that lead to Plaintiff's arrest, however, this does not mean that Defendants can be held liable for false arrest based on their conduct.  "[W]here an officer merely provides information and neither participates in the arrest, nor directs others to effectuate the arrest, he cannot be liable for false arrest."  *Miller v. County of Allegheny*, Civ. A. No. 05-733, 2006 WL 3332809, at *8 (W.D. Pa. Nov. 16, 2006).

In *Cox v. Hackett*, Civ. A. No. 05-2260, 2006 WL 2129060 (E.D. Pa. July 27, 2006), the defendant, Officer Hackett, set up surveillance in the parking lot of an apartment complex to investigate the theft of a silver Nissan.  Hackett observed Plaintiff Cox drive a green Jeep into the lot and called in the license plates on the Jeep.   Several minutes later, Hackett saw the Nissan being driven out of the parking lot; he got a look at the driver, who he believed to be Cox, the man he observed earlier driving the Jeep.  Two days later, another officer pulled over the green Jeep pursuant to a "bolo" ("be on the look out") stop on the vehicle and detained Cox in connection with the theft.  Hackett again identified Cox at a preliminary hearing, but the charges were eventually dropped.  The Court concluded that summary judgment was warranted on Plaintiff's Fourth Amendment-based Section 1983 claim for false arrest because Hackett did not sufficiently participate in Cox's arrest to warrant liability — Hackett "did not direct anyone to arrest Plaintiff and was not involved in arresting Plaintiff; he merely provided information to his department that the driver of the green Jeep

was also seen driving the stolen Nissan." *Id.* at *5.

Here, Defendants' role in Plaintiff's arrest was akin to passing along observations to other officers — Defendants merely made an identification and were neither involved in procuring the warrant for Plaintiff's arrest nor effectuating his arrest. Furthermore, there are no allegations, nor is there any evidence, that the Defendants deliberately or maliciously misidentified Plaintiff. Indeed, Plaintiff concedes that Defendants believed their identification to be correct at the time Machak presented them with Plaintiff's photograph. (*See* Pl.'s SOF ¶ 5.) Consequently, Defendants cannot be liable for their actions as a matter of law even though Machak ultimately relied on their observations to obtain an arrest warrant.

### 2. Plaintiff cannot establish a Fourth Amendment violation because probable cause existed for his arrest

Even if Defendants could be held liable for mistakenly identifying Plaintiff because their mistake ultimately caused Plaintiff's arrest, Plaintiff still cannot succeed on his Section 1983 claims because probable cause existed for his arrest. "Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Rogers*, 120 F.3d at 453 (*quoting Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995)). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). The existence of probable cause in a Section 1983 action is typically a question of fact. *Estevez v. City of Phila.*, Civ. A. No. 06-3168, 2007 WL 707358, at *4 (E.D. Pa. Mar. 2, 2007) (*citing Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997)). A court may find probable cause

as a matter of law, however, if the evidence, viewed in the light most favorable to Plaintiff, could not reasonably support a contrary factual finding. *Id.* "The linchpin of mistaken identity cases is reasonableness; the key question is whether the arrest of the wrong person was reasonable under the totality of the circumstances." *McHenry v. County of Delaware*, Civ. A. No. 04-1011, 2005 WL 2789182, *5 (E.D. Pa. Oct. 24, 2005).

In this case, probable cause existed to arrest Plaintiff as a matter of law. It is undisputed that the maroon minivan played an integral role in the heroin dealing organization and that this minivan was registered to an individual who shares Plaintiff's name — Heriberto Lozada. It is also undisputed that Machak's search of Pennsylvania licenses revealed only one Heriberto Lozada — Plaintiff. It is further undisputed that both Taylor and Burke got a clear view of the individual driving the minivan and, upon being shown a photograph of Plaintiff, positively identified him as the individual driving the minivan. The combination of the positive identification, though mistaken, and the fact that the individual who owned the maroon minivan shared Plaintiff's name, provided sufficient probable cause to believe Plaintiff was the perpetrator of the drug offenses for which he was arrested. *See Cox*, 2006 WL 2129060 at *5 (defendant's misidentification of plaintiff as a suspect "clearly" gave another officer probable cause to arrest plaintiff); *see also DeBellis v. Kulp*, 166 F. Supp. 2d 255, 266-70 (E.D. Pa. 2001).

Plaintiff attempts to combat this conclusion by noting that Taylor observed an individual driving the maroon minivan who was different from the individual Defendants observed driving on September 21, 2004. (Pl.'s Mem. at 13-14; *see also* Defs.' Mem. Ex. A at 65-66, 86-87 (noting that Taylor observed a second suspect, a "very thin Hispanic male," driving the minivan).) This only means that the police officers had reason to investigate two individuals instead of one, and has no

9

bearing on whether the police had probable cause to arrest Plaintiff in connection with their belief that he was the first individual seen driving the minivan.[3]

Although it is unfortunate that Plaintiff was mistakenly arrested, he has failed to make out a Fourth-Amendment violation because his arrest was based on probable cause.[4]  *See Cox*, 2006 WL 2129060, at *10 ("The fact that Plaintiff Cox was arrested and eventually imprisoned for a period of time, possibly because of mistaken identity[,] would indeed be unfortunate, but does not automatically create a jury issue . . . ."); *see also Hill v. California*, 401 U.S. 797, 804 (1971) ("[S]ufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment.").  Accordingly, summary judgment is appropriate.

**B.     Defendants are entitled to qualified immunity**

Defendants would be entitled to qualified immunity even if Plaintiff could make out a Fourth Amendment violation.  Qualified immunity provides a defense for officials who are sued in connection with their exercise of discretionary duties.  *McHenry*, 2005 WL 2789182, at *6 (*citing Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "The qualified immunity standard gives ample

---

[3] Plaintiff also takes issue with Machak's investigatory techniques.  Machak is not a Defendant in this matter.

[4] Plaintiff's reliance on *Ruiz v. Lebanon County Pa.*, Civ. A. No. 04-2359, 2007 WL 2907813 (M.D. Pa. Oct. 3, 2007), is misplaced.  In *Ruiz*, a confidential informant made three controlled purchases from an individual named "Peto."  The Defendant-officers observed the transaction but they did not see "Peto's" face.  An investigation yielded the information that "Peto" was a nickname for an individual named Samuel Ruiz.  Defendants swore affidavits in support of criminal complaints against Samuel Ruiz based on these facts.  The court concluded that the affidavits did not establish probable cause because they failed to establish whether the drug dealer was positively identified as Samuel Ruiz; in other words, the officers did not connect Ruiz to the drug transaction.  In contrast, Machak's affidavit established that Defendants and another officer had seen the driver of the minivan and positively identified him as Plaintiff upon viewing Plaintiff's photograph, providing the requisite link between Plaintiff and the illicit activity.  (Pl.'s Mem. Ex. B ¶¶ 9, 11.)

room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly

violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (internal quotations omitted).

There are two steps in the qualified immunity analysis. The first inquiry asks whether the

defendant's conduct violated the plaintiff's constitutional rights. *Curley v. Klem*, 499 F.3d 199, 206

(3d Cir. 2007). If the plaintiff's constitutional rights have been violated, the Court proceeds to the

second inquiry: "whether the right that was violated was clearly established, or, in other words,

'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he

confronted.'" *Id.* (*quoting Saucier v. Katz*, 533 U.S. 194, 202 (2001)); *see also Blaylock v. City of*

*Phila.*, 504 F.3d 405, 411 (3d Cir. 2007) ("The qualified immunity standard is one of 'objective legal

reasonableness.'" (*quoting Harlow*, 457 U.S. at 816-17.)). The reasonableness of the officer's

conduct is a question of law to be determined by the Court, and may appropriately be decided on

summary judgment where the operative facts are undisputed or clearly established. *Curley*, 499 F.3d

at 211; *see also Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007).

Since Defendants did nothing more than make an identification based on events they

personally observed in the course of their surveillance duties they are entitled to qualified immunity,

even if probable cause did not exist to arrest Plaintiff, because they did not act unreasonably.[5]

*Ingliema v. Town of Hampton*, Civ. A. No. 05-3497, 2007 WL 1101441, at *6 (D.N.J. Apr. 10, 2007)

("While Defendant was ultimately mistaken, his actions in swearing out an arrest warrant were not

objectively unreasonable," thereby entitling him to qualified immunity); *Liser v. Smith*, 254 F. Supp.

---

[5] Plaintiff reliance on *Blaylock v. City of Phila.*, 504 F.3d 405, 411 (3d Cir. 2007) is misplaced. *Blaylock* addressed an appellate court's jurisdiction to question facts underlying the application of a qualified immunity defense on an interlocutory appeal, and is therefore inapplicable here.

2d 89, 106 (D.D.C. 2003) ("[E]ven if [defendant's] judgment were [sic] mistaken, and the arrest of [plaintiff] was not actually supported by probable cause, his conduct is sheltered by qualified immunity from liability under [section] 1983."); *DeBellis*, 166 F. Supp. 2d at 271 (qualified immunity applied where defendants "acting on a general description and arresting an individual within close geographic and temporal proximity to the reported siting [sic], could reasonably believe that their arrest, although ultimately mistaken, was justified").  "Officers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause . . . and in those situations courts will not hold that they have violated the Constitution." *Saucier v. Katz*, 533 U.S. 194, 206 (2001).  Such is the case here.

### C.      Summary judgment is warranted on Plaintiff's state law claims

The parties and the Court agree that for purposes of resolving this motion, Pennsylvania law applies to Plaintiff's state claims.  In Pennsylvania, a tort claim for false arrest lies where an arrest is made without probable cause.  *Gilbert v. Feld*, 842, F. Supp. 803, 821 (E.D. Pa. 1993).  The elements of a false imprisonment claim in Pennsylvania are "(1) the detention of [a] person; and (2) the unlawfulness of that detention." *Id.*  As in 1983 law, an arrest without probable cause sufficient to establish a false arrest claim also gives rise to a claim for false imprisonment.  *Id.*; *see also Glass v. City of Phila.*, 455 F. Supp. 2d 302, 365 (2006) ("Under Pennsylvania law, the torts of false arrest and false imprisonment are essentially the same actions.").  The above-mentioned standards governing the probable cause analysis under the Fourth Amendment are equally applicable to Plaintiff's state law claims.  *Colbert v. Angstadt*, 169 F. Supp. 2d 352, 359 n.10 (E.D. Pa. 2001).

Since Plaintiff cannot establish that he was arrested without probable cause, as discussed above, his state claims fail and summary judgment is warranted.  As such, it is unnecessary for the

Court to address Defendants' argument that they are entitled to immunity under the Pennsylvania

Political Subdivision Tort Claims Act.

**IV.     CONCLUSION**

Based on the above, Defendants' motion is granted.  An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HERIBERTO LOZADA,** | : | |
| Plaintiff, | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | |
| **WILMINGTON DEPARTMENT OF** | : | |
| **POLICE, et al.,** | : | No. 07-663 |
| Defendants. | : | |

## ORDER

**AND NOW**, this **5**th day of **May, 2008**, upon consideration of Defendants' Motion for Summary Judgment, Plaintiff's Response thereto and for the foregoing reasons, it is hereby

**ORDERED** that Defendants' motion (Document No. 22) is **GRANTED**.  The Clerk of Court is directed to close this case.

BY THE COURT:

_____

**Berle M. Schiller, J.**